Thank you. Yes, if I could reserve two minutes for rebuttal. You got it. You may proceed. May it please the court, Elizabeth Little on behalf of appellant Christopher Kim. This case concerns Mr. Kim, a private citizen who provided information to a dirty off-duty sheriff's deputy, which the deputy later used to rob a marijuana distribution warehouse. Today I plan to address three major issues for the court. First, the major instructional deficiencies that led to Mr. Kim being convicted of multiple civil rights violations under 18 U.S.C. sections 241 and 242. Second, the insufficient evidence that forms the basis of the conviction for brandishing a firearm under section 924. And third, the major procedural and substantive errors that resulted in Mr. Kim being sentenced to 14 years in prison, a sentence that is two times that imposed on any of his separately charged co-conspirators. On October 28, 2018, off-duty sheriff's deputy Mark Antrim and five of his henchmen, none of whom were law enforcement, dressed up in sheriff's department gear and executed a fake search warrant to rob a marijuana distribution warehouse. Although Mr. Kim is not present for the robbery, he has always acknowledged the limited at-home role he played by giving information about the warehouse to Antrim before the robbery. A robbery by trickery, or dressing up as sheriff's deputies and executing a fake search warrant, is simply not the type of conduct that the civil rights statutes or the branching enhancement were meant to punish. Yet because Mr. Kim exercised his constitutional right to refute some of the charges at trial, numerous instructional and other errors resulted in Mr. Kim, the one person who was not even physically present for the robbery, being held vicariously liable for federal civil rights violations and brandishing, which never occurred in the first place. Well, can I ask you a question about that? You phrase it as vicarious liability, but really he was charged with conspiracy. I mean, you don't seem to be challenging the evidence that supported the conspiracy conviction, right? Well, we are challenging the evidence that supported the conspiracy conviction, in the sense that the failure to instruct on the specific intent requirement, as well as some of the errors that occurred with regard to the brandishing, resulted in him being convicted of statutes that were not meant to punish the type of conduct that occurred here. Even for the individuals who perpetrated the actual robbery. The manifest injustice that occurred in this case is highlighted by the extreme disparity in sentences between Mr. Kim and his separately charged co-conspirators. His sentence of 14 years in prison is twice as long as any of his co-conspirators who actually went to the marijuana distribution warehouse, falsely impersonated law enforcement officers and participated in the robbery. But isn't there a reason for that? I mean, the other co-conspirators, they pled guilty, they worked with the police, they were cooperative, and ultimately they didn't have the brandishing charge, because they didn't plead guilty to that. Well, with regard to that, it's McBride's testimony, for instance, that is used, who, by the way, did not carry a real firearm during the course of the robbery, so his intent is irrelevant, that said that he carried it for the purpose of intimidation. And it's his testimony that's essentially used to find brandishing and hold Mr. Kim vicariously liable for the brandishing. Which is just inherently unfair, because Mr. Kim wasn't even present for the robbery. He knew, though, that guns were going to be used, or make-believe guns. He did not know that. All he knew is that a fake search warrant was going to be executed. He may have known that Antrim, a law enforcement officer, may have had a service weapon, but that is distinct from what's required for brandishing. A service gun is also a gun. Sorry? If a service gun is worn prominently, one could say that it's a brandishment. So, brandishing requires two things. It requires, first, a display, or that the firearm be made known to another. But it also requires that it be done for the purpose of intimidation. And that purpose is what's not present here. If you look at Section 924, it distinguishes between the use or carrying of a firearm during or in relation to a drug trafficking crime, and brandishing a firearm during the same. And while Antrim clearly used or carried a firearm during this particular drug trafficking crime, he never brandished it. Was the jury given a question, a special question, about brandishment rather than possession? Sorry? Was the jury asked to make a finding? The jury made a finding as to brandishing. The jury was given the option of deciding whether it was mere use, or possession, or brandishment. Yes. The jury chose brandishment. Is that what it was? Yes, but the reason that the jury got it wrong in this case is because the government put McBride on the stand, who again, was not carrying a real firearm, to essentially testify as to why he carried this fake firearm. And he said he did it to intimidate. But you had Antrim testify as well as to why he carried the service weapon. That's the only real firearm in this case. But what if he had evidence from which he could make an inference of brandishment? Well, Antrim testified that he was dressed as a sheriff's deputy and carried a service weapon for the express purpose of showing the security guards that they were actual law enforcement agents there to conduct a search warrant. But to the eyes of the beholder, there was a gun in prominent position on a gun belt. Right, but brandishing requires intent. The United States Supreme Court in Dean has said it requires a specific intent to intimidate. What is the problem? Is it the charge, or is it the lack of evidence, or what? It's a sufficiency claim. There's insufficient evidence that... It's intimidating, right? Right, but the subjective feelings of that witness is not relevant. That he used it for purposes of intimidation. So the jury has the opportunity to decide the credibility and the nuance and the degree. It's not a problem of lack of sufficiency of evidence. It's a question whether you think the evidence was fairly drawn by the jury. Well, the problem is that Antrim's testimony is incontrovertible as to what his intent was in carrying a real firearm. What happened, and what the error is, is that the jury essentially addled these two different... The intent from McBride and the action of Antrim, which is carrying a service weapon, to get what is necessary for brandishing. But that's not what's allowed under Section 924C. If Kim is in a conspiracy, which contemplates the use of people with police uniforms to commit a burglary, a robbery, Kim is responsible, is he not, for what is foreseeable. And it is certainly foreseeable that if you're going to use people with guns, that the guns would be brandished. That would become security guards. Again, brandishing requires two elements. One, that the firearm be displayed, and two, that it be done with the intent to intimidate. But it can't be displayed by being hung on your hip. Well, this court itself has found, in Gonzalez, that 924C is not automatically violated any time a uniformed law enforcement officer commits a drug trafficking crime.  Specific intent to intimidate is what you're saying. That's what you're focused on. But I'm hearing your argument to say the only thing that was proper, the only evidence that was proper for the jury to consider, was the testimony of the officer who was actually carrying an operable gun. And that it was legal error, in your view, for the jury to consider other testimony, including testimony by one of the co-conspirators that said, we went in there with guns to intimidate them, and we had every intention of overpowering them so that we could steal the marijuana. Correct. Because, again, McBride was not carrying a real firearm. I understand, but I mean, I'm just probably putting another, going at this another way, but the inference from McBride's testimony seems to support it. What's the position for the only way you can prove specific intent is by the defendant's, I mean, he wasn't a defendant, but by the perpetrator's own testimony. A lot of criminals would get out of specific intent crimes if that was the only evidence that could be presented to support a conviction of specific intent. McBride's after-the-fact testimony cannot rebut Antrim's expressed testimony as to why he carried the service weapon. That's our position. And again, there's also insufficient evidence of display. The mere presence of a holstered duty weapon is insufficient to establish display under 924C4. Antrim's testimony is clear. He dressed as a sheriff's deputy and kept his firearm holstered for the duration of the robbery. He never alerted to the presence of the firearm. I'd also like to discuss for the swiftness court the specific intent issue as well. Sections 241 and 242 were designed for a very specific purpose. They were passed as an anti-discrimination measure designed to protect black citizens' newly won constitutional rights after ratification of the 15th Amendment. They were enacted for the very specific purpose of allowing the federal government to prosecute law enforcement officers and sometimes private citizens who acted with a specific intent to violate a constitutionally protected right. In practice, these statutes have been used to punish individuals who acted with the purpose of depriving black citizens of their right to trial by engaging in extrajudicial beatings, often resulting in death. We saw that in Scrooge and Price. Individuals who acted with the purpose of diluting rights of voters by engaging in election fraud, we saw that in Anderson. And more recently, in the federal indictment of Derek Chauvin for violating George Floyd's constitutional right to be free from the unreasonable force by a police officer. The requirement that a defendant act with a specific intent to violate a constitutional right is the limiting provision that prevents civil rights violations from becoming a federal catch-all statute, substituting for state criminal law. That instruction, that very limiting instruction, was not given in this case. And that's why the jury was able to convict Mr. Ken of violating civil rights statutes in spite of the fact that the same purpose and intent we saw in Scrooge, Price, and Mr. Chauvin's case was not present here. If you look at the jury instructions for the crime of conspiracy against rights of Section 241, it shows that the specific intent requirement was omitted entirely. The government concedes that it was not given, but instead argues that the separate conspiracy instruction somehow cures that omission. However, this court has specifically rejected that argument in United States v. Ken. The jury was also not instructed with regards to under 242 that it must find that a co-conspirator acted with the purpose to deprive a person of a specific constitutional right or specifically intended to deprive the person of that right. Subsequent case law interpreting this requirement has made clear that the purpose must be governmental to carry out a warrantless search or seizure. We saw that in Ehrlichman. Again, that instruction was not given here. A robbery that is clearly perpetrated for personal gain is simply not the type of conduct that these civil rights statutes were meant to punish. Because the jury was never instructed that it must find that the defendant acted with a specific intent to violate a constitutionally protected right. His convictions for the civil rights violations must therefore be reversed. Do you want to reserve? Yes. Very well. We'll give you we'll round up the two minutes. Ms. Manning. All right. Thank you as little for that. And Ms. Dotson, you have the floor. Morning, your honors. Thank you very much. May it please the court. Lindsey Greer Dotson for the appellee, the United States. With this appeal, defendant seeks to disrupt a jury's legitimate verdict by primarily raising issues for the first time on appeal that have been waived. And even if this court finds them reviewable at all, most are subject only to plain error review in which the defendant bears the burden of showing harm. And under plain error or frankly any other standard, none of any merit. I'd like to address a few things that appellant's counsel just mentioned. So just to be clear, the 241 challenge is an instructional challenge. It is not a sufficiency of the evidence challenge. With respect to brandishing, it is not an instructional challenge. It is only a sufficiency of the evidence challenge. I'm happy to address the merits if the court would like. If the court assumes that they're reviewable at all. I actually have a couple questions on the jury instruction. Sure. You're claiming waiver, but our case law doesn't. It is true that the defense counsel agreed to the jury instruction. But is there evidence? It seems like our case law requires further evidence that they actually rejected other alternatives. And I'd be interested to know what the government's position is. I mean, how that's complied with. So there was waiver because the defendant himself proposed these instructions. And appellant's argument, defendant's argument in this case is that while there was no evidence in the record that defense counsel was aware of screws or any of its progeny when it agreed to the proposed jury instructions. That's wrong. In the government and defendant's proposed jury instructions in the annotated version. There were sites to screws and price and other authority supporting the mens rea requirement in this case. There is evidence in the record that defendant was aware of the prevailing case law. And frankly, the reason that defendant and defense counsel agreed to it is because the instructions are substantively right. There is simply, even if this court were to find the issue reviewable under plain error, there's no harm because they were right at the end of the day. And I'm happy to explain why they were right. I wanted to ask about that because at least oral argument, what I heard was it was a little more finer point. When you read the jury instructions, it's pretty clear that there is specific intent that's included in the jury instructions. But it seems like the argument is a little bit more nuanced. Because, for example, in 241, the jury instruction requires an intent to further the conspiracy. And what I'm hearing now is, well, that's, you know, that may be specific intent, but that's not specific intent of a civil rights violation of itself. So could you address that? Certainly. So for the 241, I'd like to just go through what the jury instructions given and proposed by the parties actually were. So for 241, the government must have shown that there was an agreement between two or more persons to injure, oppress, threaten, or intimidate an individual in the free exercise or enjoyment of at least one of the victim's rights secured by the Constitution or the laws of the U.S. And then the defendant knowingly became a member with the intent to further the conspiracy. And then, of course, the victim was present in the U.S. The court further instructed that one must willfully participate in or join in the conspiracy with the intent to advance or further the object or purpose of the conspiracy. And then the court went on to explain what the constitutional rights were at issue and what color of law meant. Neither of those things are at issue. That is squarely in line with Screws and Price and Guess and, frankly, Ehrlichman in that case. In Ehrlichman, Ehrlichman similarly was a 241 instructional challenge. And in that case, the jury was instructed that the conspiracy must have been to carry out a warrantless entry in search of, in that case, Dr. Fielding's office without his permission. That's what the government instructed here. There was no, there was nothing confusing or otherwise wrong when it was clear that the purpose and the object of the conspiracy was to oppress, threaten, intimidate, or injure someone in the exercise of their constitutional rights. That was clear. I'm happy to address another issue with regarding 242 and go through the instructions in that case. Or if the court would like, I would like to move on to brandishing unless the court has any further questions. I do have a question on brandishing. Certainly. The Tizer case from 1996 suggests, I'm wondering if that statement was dictative because we seem to have come up with four subsequent cases. This goes to the, I guess, the waiver argument. I don't know. I'm trying to look back if it's waiver exactly. But I'm interested to know what the government's position is on Tizer. Is it in conflict with the subsequent cases that have gone the other way? Or is the government's position that Tizer is dicta and the subsequent cases control? From what I recall, I do believe it's dicta. The government's position is this. Defendant concedes that there was no Rule 29 motion made. Without a Rule 29 motion, the issues waive. Now, the court in Beckett, and that's a single case cited by defendant, is where there is a manifest miscarriage of justice that is about to happen. The court will review a sufficiency challenge, but only for plain error. And in Beckett, that was where the defendant simply failed to renew a Rule 29 motion. And there was zero evidence on the record about one of the elements. In that case, there was no evidence that the defendant knew that the heroin had been imported to the U.S. So it was clear to the court on appeal that if they went with waiver, it would be a manifest miscarriage of justice. That's not an issue here. The record is replete with evidence regarding the open display or otherwise making known of a firearm and that it was done for the purpose of intimidation. This is not a Beckett-like situation. This is a case where the issue is waived. But even if the issue hasn't been waived, I'm happy to address why there is no plain error. What I'm trying to drill down on is on the waiver issue. Because you cite to Tizer, and Tizer does say from 1996, under the Lobb District, it is clear that the right to seek review of the sufficiency of the evidence is waived if the accused fails to make a motion for a judgment of acquittal before the matter is submitted to the jury. I'm confusing my cases. It's Tizer 96F, 3rd at 379. As I understand it, and maybe my initial question is an artful, the government is relying on Tizer and this statement in Tizer. Although, I guess my question is, why isn't Tizer victim? I mean, if Tizer isn't victim, we seem to have a problem with a 1996 case that seems to support the government's position. And then, you know, several cases after that, 2007, 2008, 2011, that all say, no, it's not a waiver just because they didn't file a motion for a judgment of acquittal at the close of evidence. And so I'm trying to figure out how to reconcile those just institutionally for the court. And it seems like the way to reconcile that, and you may take a different position, but if Tizer is dicta, which it appears to be because it's not, I mean, ultimately the court in Tizer did look to the sufficiency of the evidence, then I don't think we have a problem. But if it's not dicta, if the government really believes that that's not dicta, then we need to analyze that question. I think there is a way to reconcile it. So I think the general rule that's prevailing in Gonzalez, Tizer, and Ward is that if there's no Rule 29 motion, a sufficiency of the evidence challenge is waived. However, there is this almost a catch-all provision that wards against a manifest miscarriage of justice, and that's Beckett, when there's just simply no evidence in the record. So that is an effort to provide a cure in a situation where a standard bright-line rule might allow for a manifest miscarriage of justice, and I think that's a way that it can be reconciled. But I'm happy to address, this is a case where there is simply zero plain error. Defendant and the government... Did the defendant move for a dismissal of the case at the end of the government's case? No. No time during the course of the trial? I'm sorry. No motion? No Rule 29 motion. I'm sorry. I think there's a delay. There was no Rule 29 motion made, no motion for dismissal. When the government rested, did the district judge say motion? I don't remember if the district judge said motion. I apologize. Defendant concedes in defendant's reply brief that there was no Rule 29 motion made. Really? So with that, even if the court were to get to the issue of brandishing, it's pretty clear that there is no plain error, and here's why. As defendant's counsel said, the three elements are openly display or otherwise making known for the purpose of intimidation and furtherance of a drug trafficking crime. The third element's not at issue from defendant's brief. So it was clearly openly displayed or otherwise made known. It's apparent. It's visible in the surveillance camera footage. A victim testified that she saw it. That doesn't seem to be at issue. Now, for the purpose of intimidation, I would like to quote Kevin McBride. Now, let me be clear. Kevin McBride was not a law enforcement officer, but he dressed up as one. He knew Mark Antrim. They were friends. They planned the robbery together. They had multiple prep meetings. And he testified on the stand, quote, We wanted to look like deputies by having arms on us. And, quote, also wanted to make sure that whoever was there was intimidated and knew that we meant business. That statement alone, drawing all reasonable inferences in favor of the jury's verdict for brandishing, and, Your Honor, as you asked, there was a specific finding by the jury that the gun was not just carried, but it was brandished. With that sentence alone, I'm happy to address other evidence in the record, but that sentence alone ends the brandishing sufficiency inquiry alone. I'm happy to address more of the evidence that supports brandishing if the court would like. If not, I'd like to address one other thing that defendant's counsel said right at the opening of her appeal, if I may. So one of the first things that defendant's counsel said was that the defendant had a limited at-home role. And I'm sorry, I can't let that stand. This was a defendant who was fired from his job at this marijuana distribution warehouse, bitterly angry, teamed with a corrupt deputy to plan the robbery, and provided that deputy with pictures and maps and diagrams to execute the robbery. Then, yes, the deputy went in with his fake law enforcement team and executed. The defendant, it's shown on surveillance camera footage, took possession of $1.5 million in stolen marijuana and sold it for pure profit. Now, the thing is, in this case, the deputy and his team, for all of their involvement during the robbery, they only made off with $600,000 in cash and money. This is a defendant who didn't even have to get his hands dirty, who planned everything with the deputy, who walked away with the biggest payday of all, $1.5 million. And at trial, not one, not two, but three co-conspirators testified about his leadership role in this operation. It was corroborated by the defendant's own Instagram direct messages with Mark Antrim, in which you see the defendant planning the robbery, leading the robbery, telling Mark Antrim to get a burner phone, talking about committing future robberies together, talking about the status of how much, hundreds of thousands of dollars he's making during the resale of the stolen marijuana, and wanting to get further revenge against his former bosses. This is a case where there is no question that the defendant having a, quote, limited at-home role is a gross mischaracterization of the defendant's role and the evidence presented at trial. So I did just want to correct the record on that. I'm happy to address any other issues the court has. I'm not seeing any hands, so if that's it, I always say if you don't get any questions, it's always okay to end early. You don't get bonus points for using all your time. Thank you, Your Honor. I appreciate it. Very well. All right, Ms. Little, you have two minutes. Hold on, Ms. Little. Ms. Little, hold on. You've got to unmute yourself. Thank you. Now you can roll. With regards to the waiver issue for the omission of the specific intent requirement, as Your Honor has pointed out, it requires more than just an omission. It requires an intentional, the Ninth Circuit requires an intentional relinquishment of a known right. Here, under, there's no evidence of that. The language in this conspiracy... Well, hold on. There seems to be evidence of it. The question was whether the instruction included it, and the government's saying that comes in through the primary instruction on the base offense. So, with regard to 241? Yeah, at least that was my understanding. Correct me. So, she's saying that acting knowingly with the intent to further the conspiracy satisfies the intent element, but that is not the same as acting with the specific intent to violate a constitutional right. Well, but wasn't there a separate jury instruction about the conspiracy, and what was encompassed within the conspiracy? Yes, but under Anderson, the United States Supreme Court has made clear that the jury is supposed to have to find, specifically, that there is a specific intent to violate a constitutionally protected right, and they are entitled to an instruction phrased in those terms. And that was not done here. Okay. And with regards to Ehrlichman, you know, there were additional instructions that were given in that case. Not only did there have to be a warrantless search that was executed, but it also had to be done for a governmental purpose, and that instruction was not given in this case. With regards to the waiver issue for the brandishing issue, the sufficiency issue, Tizer is an incomplete recitation of the law. It dealt with a timing issue, which is not present in this case. But there's numerous... Can I just say, I know you're over time, but one question on Tizer. So, that was interesting what you said. It dealt with a different issue. Is your position that that statement that I read in Tizer is dicta, or do we have a problem that we need to reconcile in our circuit? It's dicta. And there's three other cases, Ward, Beckett, King, all of which post-date, that make it clear that the court still will hear these challenges for plain error. I know I'm over time. I think you guys gave me a little bit of extra time. Why don't you go ahead and just wrap it up real quick. Sure. In short, the many instructional, evidentiary, and other errors that occurred at trial and sentencing in this case, resulted in Mr. Kim's convictions for federal civil rights violations and brandishing, under a theory of vicarious liability for conduct by others that was clearly not meant to be punished under these respective statutes. And what's more, Mr. Kim, the one person who wasn't actually present for the robbery, was then sentenced to 14 years in prison, which, again, is more than two times that of any of the... Is the conspirator a vicarious liability situation, or a direct liability? The conspiracy is not vicarious liability, but I apologize, yes, but for 242 it was vicarious liability. But the point being, he was not present for the robbery. So he's being held responsible for the actions of others, in spite of the fact that he's now received the sentence of two times that of any of his co-conspirators to date. All right, thank you very much, Ms. Little. Thank you, Ms. Dotson, as well. Fine argument, fine briefing, fascinating factual case. This was an interesting one to read, I will say, as a judge. So thank you both. That's our last case for today for argument, and this panel is adjourned.
judges: Owens, Hellerstein, Nelson